IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS CHRISTOPHER MYHAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:21-cv-48-JTA |
| ) | (WO) |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Thomas Christopher Myhand ("Myhand"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Myhand's claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the parties' briefs, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.   PROCEDURAL HISTORY AND FACTS

Myhand was 44 years old at the time of his alleged disability onset date of January 22, 2019.  (R. 22.)[2]  He completed the eleventh grade and previously worked as a floor finisher, furniture deliverer, and food service worker.  (R. 22, 33.)  Myhand sought a disability determination due to acute hypoxic respiratory failure due to a congestive heart failure ("CHF") exacerbation; an acute exacerbation of chronic systolic CHF with non-ischemic cardiomyopathy; hypertensive urgency; stage 3 chronic kidney disease; uncontrolled hypertension; non-ischemic cardiomyopathy; and obesity.  (R. 17-18.)

On January 25, 2019, Myhand protectively filed for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.), and filed an application for SSI under Title XVI (42 U.S.C. §§ 1389, *et seq*.).  (R. 15.)  These claims were initially denied on May 16, 2019 and Myhand requested an administrative hearing.  (R. 15.)  The hearing was held before an Administrative Law Judge ("ALJ") on April 14, 2020.  (R. 28-48.)  The ALJ returned an unfavorable decision on April 27, 2020.  (R. 15-24.)  Myhand sought review by the Appeals Council and it denied his request.  (R. 1-5.)  Thus, the hearing decision became the final decision of the Commissioner.[3]

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (*See* Doc. No. 20.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

On January 20, 2021, Myhand filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 16, 19.) Hence, this matter is ripe for review.

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210; *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019). However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled.[4] *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity

---

[4] Although DIB and SSI are separate programs, the standards for determining disability are identical. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number

of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Myhand met the insured status requirements of the Social Security Act through December 31, 2020. (R. 17.) The ALJ also found that Myhand had not engaged in substantial gainful activity since January 22, 2019, the alleged onset date. (*Id.*) The ALJ found Myhand had severe impairments of acute hypoxic respiratory failure due to a CHF exacerbation; an acute exacerbation of chronic systolic CHF with non-ischemic cardiomyopathy; hypertensive urgency; stage 3 chronic kidney disease; uncontrolled hypertension; non-ischemic cardiomyopathy; and obesity. (R. 17-18.) Nevertheless, the ALJ concluded that Myhand's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 18.)

After consideration of the entire record, the ALJ determined that Myhand has the RFC to perform sedentary work[5] as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he has the following limitations:

---

[5] Title 20 of the Code of Federal Regulations defines sedentary work as:

> [I]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

6

> He can frequently stoop, kneel, crouch, and crawl. He would have to avoid concentrated exposure to extreme temperatures of heat or cold. He can never climb ladders, ropes, or scaffolds. He cannot drive as a regular part of the job. He can continuously use the hands for fingering, feeling, and reaching in all directions. He can frequently use foot controls.

(R. 18.) Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Myhand is unable to perform past relevant work. (R. 22.)

After considering Myhand's age, education, work experience, and RFC, and having the benefit of the VE's testimony, the ALJ concluded that jobs exist in significant numbers in the national economy that Myhand can perform. (R. 23.) The ALJ further concluded that Myhand had not been under a disability from January 22, 2019, through the date of the hearing decision. (R. 23.) The ALJ determined that, based on the application for a period of disability and DIB filed on January 25, 2019, Myhand is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 24.) The ALJ further determined that, based on the application for SSI filed on January 25, 2019, Myhand is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V.   DISCUSSION

Myhand contends the Commissioner's decision should be reversed because the ALJ failed to consider his prescription medications and the side effects they might have on his RFC. Myhand argues he completed a Function Report on March 3, 2019 wherein he repeatedly noted negative side effects associated with his medications and indicated that his medications cause dizziness. Myhand also cites to a Disability Report he completed on June 1, 2019, wherein he indicated that three of his medications caused negative side effects including dizziness, urinary frequency, and blurred vision. Myhand complained to

7

his cardiologist on May 10, 2019, that "when he takes all of his medications in the mornings it makes him feel a littl[e] dizzy and crazy in the head."  (Doc. No. 16 at 6 (citing R. 321).)  Further, Myhand testified at his administrative hearing that his medicine for his heart "kind of make[s] [him] a little woozy . . . ."  (Doc. No. 16 at 6 (citing R. 36).)

The Commissioner responds that Myhand's argument is baseless because the ALJ specifically discussed his medication side effects in assessing his RFC.

"In determining whether a claimant's impairments limit [his] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms."  *Walker v. Comm'r of Soc. Sec.,* 404 F. App'x 362, 366 (11th Cir. 2010) (citations omitted).  To fulfill her duty to adequately develop the record, an ALJ *may* need to elicit testimony and make findings regarding the effect of the claimant's prescribed medications upon his ability to work.  *Compare Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) (concluding ALJ failed to fully develop record where claimant was unrepresented, had not waived her right to counsel, and asserted that side effects contributed to her disability), with *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985) (finding ALJ's failure to inquire further into possible side effects did not deprive claimant of meaningful opportunity to be heard where she was represented at hearing and did not allege that side effects of drugs contributed to her disability).

Yet, "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving [he] is disabled."  *Walker*, 404 F. App'x at 366 (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).  "Thus the claimant must introduce

evidence supporting [his] claim that [his] symptoms (including any medication side effects) make [him] unable to work." *Id*.

Here, the ALJ applied the correct legal standards and adequately evaluated Myhand's medication side effects. At the administrative hearing, Myhand, who was represented by counsel, testified that his medication caused dizziness.[6] (R. 36.) In response to the ALJ's inquiry regarding his medications,[7] Myhand also testified that the CHF causes him to become dizzy[8] and that his physician advised him that the "dizziness is going to be there." (R. 36.) He further testified that "[e]very day is different . . . and some days [he's] just dizzy and some days [he's] just, it's just different." (R. 37.) Myhand's attorney did not argue that medication side effects contributed to his disability. (R. 32.)

In the hearing decision, the ALJ did not explicitly evaluate Myhand's medication side effects. However, in her analysis of Myhand's RFC, the ALJ noted Myhand's testimony regarding "ongoing problems with dizziness and swelling" and noted that he described "conservative treatment of his impairments with heart medications." (R. 19.) The ALJ summarized the medical records and repeatedly listed Myhand's prescribed medications. (R. 19-21.) She also noted that Myhand had ran out of his medications in

---

[6] (R. 36) (" . . . so the medicine for the heart is kind of make you a little woozy so you have to sit there for a while and then I get up . . . .").

[7] (R. 35) ("Are you still taking your medications? What is your situation with that?"); ("How are you doing now that you['re] back . . . on your meds . . . . How are you doing?").

[8] (R. 36) ("It's just that, you know, the standing, you get dizzy, you bend over you get dizzy. . . . That's what the congestive heart failure do.").

9

March 2019, but he denied problems with dizziness absent taking the medications. (R. 20.) She noted that Myhand "alleged some dizziness after taking his medications," but "reported only moderate symptoms, affecting no more than 25 percent of his usual activities." (R. 20.) She further noted that "subsequent cardiology records show a significant improvement of his condition through compliance with routine treatment." (R. 21.) The ALJ found that Myhand's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[,]" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 19.) This finding "encompassed [Myhand's] testimony about [his] side effects," *Walker*, 404 F. App'x at 367, and Myhand does not challenge the ALJ's credibility finding in this appeal.[9]

The ALJ's failure to explicitly evaluate Myhand's medication side effects is not reversible error. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And while the ALJ did not specifically assess Myhand's medication side effects, she did state that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as

---

[9] Credibility determinations are committed to the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Ybarra v. Comm'r of Soc. Sec. Admin.*, 658 F. App'x 538, 540 (11th Cir. 2016). Courts will not disturb an ALJ's findings where the credibility finding is clearly stated and indicates specific reasons for discounting a claimant's subjective complaints of disabling pain. *Mitchell*, 771 F.3d at 782.

10

consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and [Social Security Ruling ("SSR")] 16-3p." (R. 18.)  These regulations provide that an ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medications" when evaluating a claimant's testimony about his symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  SSR 16-3p provides that the Commissioner will use the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), when evaluating a claimant's symptoms, including "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms."  Soc. Sec. Ruling 16-3p, 82 Fed. Reg. 49462-03, 2017 WL 5180304 (Oct. 25, 2017).  Thus, the ALJ's citation to the relevant regulations and SSR 16-3p shows she considered Myhand's medication side effects when she evaluated his subjective testimony.  *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding that ALJ who did not specifically mention testimony about medication side effects considered side effects because she cited to regulations that said she had to consider medication side effects when evaluating the claimant's subjective testimony).

      Further, Myhand has not shown that the ALJ's consideration of his medication side effects was reversible error.  "Nothing in [Myhand's] testimony suggested that [his] [medication side effects] were severe enough to be disabling either alone or in combination with [his] other impairments." *Walker*, 404 F. App'x at 367.  On the record before the

11

Court,[10] the ALJ's finding concerning Myhand's symptoms was articulated with substantial supporting evidence in the record. Hence, "[Myhand] has not shown that the ALJ's handling of [his] testimony about [his] medication side effects was reversible error" and the Court finds no reason to disturb the ALJ's finding. *See Nance-Goble v. Saul*, No. 4:20-CV-00369-CLM, 2021 WL 2401178, at *4–5 (N.D. Ala. June 11, 2021).

Because the ALJ conducted a thorough review of the medical evidence, followed the requirements for weighing medical proof, and reached a decision based on a detailed consideration of the evidence, this Court concludes that the ALJ's decision is supported by substantial evidence.

## VI. CONCLUSION

After review of the administrative record, and considering Myhand's arguments, the Court finds the Commissioner's decision to deny disability is supported by substantial evidence and accords with applicable law. Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

---

[10] Myhand relies on *Lacy v. Barnhart*, 309 F. Supp. 2d 1345 (N.D. Ala. 2004), to argue that the ALJ's failure to pose any questions to the VE regarding the effects of Myhand's medication on his ability to work is reversible error. (Doc. No. 16 at 5.) However, *Lacy* is distinguishable from this case. In *Lacy*, the claimant claimed disability due to panic attacks and side effects of medication. 309 F. Supp. 2d at 1346. The claimant's "[d]ocumented side effects include drowsiness, light-headedness, dry mouth, nervousness, dizziness, weakness, queasy stomach, decreased memory, forgetfulness, day-time sleeping, and night-time insomnia." *Id*. at 1352 n. 23. In this case, Myhand did *not* claim disability due to medication side effects and the only medication side effect he testified to was dizziness on "some days." (R. 36, 37.) Likewise, the medical record shows that, though Myhand reported suffering from dizziness (R. 225, 322, 332), he also reportedly denied dizziness on occasions (R. 267, 299), complained that "all of his [medications] in the mornings . . . makes him feel "a litt[le] dizzy and crazy in the head" (R. 321), and asserted that only his blood pressure medicine causes dizziness (R. 237).

DONE this 2nd day of February, 2023.

/s/ Jerusha J. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE